## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into on March __, 2018 by and between Plaintiff [INSERT] and Defendant South Shore Hospital ("Defendant"); and any other subsidiary, predecessor or successor Defendant entity that employed any Opt-In Plaintiff and is subject to the terms and conditions hereof and the approval of the Court. Plaintiff [INSERT] and Defendant are referenced collectively herein as "the Parties."

## BACKGROUND AND RECITALS

1. On June 8, 2016, Plaintiff Arrion L. Shelton filed the instant litigation in the United States District Court for the Norther District of Illinois alleging that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Portal-to-Portal Act, 29 U.S.C. § 251, *et seq.*, and the Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq.* by failing to properly calculate overtime as required by these laws ("the *Shelton* lawsuit").

2. Defendant denies any liability or wrongdoing of any kind associated with the claims that are or were alleged in the *Shelton* lawsuit. Defendant contends, among other things, that it has complied at all times with all applicable Illinois and federal laws.

3. On January 24, 2017, this Court granted Plaintiff's Motion to Begin Notice to Members of the Plaintiff Class. Notice was sent to all employees of Defendant who between July of 2014 and December 15, 2016, worked over 40 hours in a work week in which he or she was paid a wage shift differential. Since that time, one hundred and fourteen current and former employees of Defendant consented to participate (hereinafter "Opt-In Plaintiffs").

4. Each Opt-In Plaintiff received a Notice of Lawsuit form in which he/she was advised that he/she would be represented by Plaintiff's current attorney. Moreover, each Opt-In



Plaintiff was required to execute a Notice of Consent form, which stated that they would join the *Shelton* lawsuit as a Plaintiff.

5. The Parties have spent a considerable amount of time informally exchanging documents related to the calculation of overtime that is the central focus of the *Shelton* lawsuit. This includes multiple conversations regarding the calculation of overtime; the rationale behind the calculation of overtime; the actual joint computation of the overtime; and multiple discussions regarding the results of the calculations.

6. Pursuant to the terms of this Settlement Agreement, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims which exists between them arising from this litigation. In order to achieve a full and complete release of Defendant of such disputes and claims, each Opt-In Plaintiff, through execution of the Settlement Agreement, acknowledges that this Settlement Agreement is intended to include in its effect all claims arising from the allegations in the *Shelton* lawsuit.

7. It is the intention of the Parties that this Settlement Agreement shall constitute a full and complete settlement and release of all unpaid compensation claims arising from the factual allegations of the *Shelton* lawsuit, including, without limitation, claims in the nature of claims for unpaid wages and overtime pay between the dates of July 2014 and December 15, 2015, and including but not limited to claims under the FLSA, Portal-to-Portal Act, Illinois Minimum Wage law, and all state and federal wage laws, as well as claims for attorneys' fees and costs based on the foregoing claims. Said release shall include in its effect the Defendant, and each of its present and former parent companies, subsidiaries, affiliates, shareholders, officers, partners, directors, members, servants, employees, agents, attorneys, insurers, predecessors, representatives, accountants, past, present, and future, successors and assigns, and

each and all of their respective officers, partners, directors, members, servants, agents, shareholders, employees, representatives, accountants, insurers, and attorneys, past present, and future, and all persons acting under, by, through, or in concert with any of them (collectively, the "Releasees").

## **TERMS OF SETTLEMENT**

8.  <u>Establishment of Settlement Monies</u>.  Defendant agrees to pay a total sum of $148,558.30 to fund its settlement obligations in accordance with this Settlement Agreement, said sum representing the total of all back wages and liquidated damages paid to all Opt-In Plaintiffs as well as attorney's fees paid to the lawyers representing all Opt-In Plaintiffs. Payments by Defendant pursuant to this Settlement Agreement shall settle all pending issues between the Parties, including, but not limited to, all payment of class claims, attorneys' fees and costs. The payments made to Opt-In Plaintiffs shall not be construed as compensation for purposes of determining eligibility for unemployment compensation or any benefits offered by Defendant, including health and welfare benefits.

9.  <u>Calculation of Opt-In Plaintiffs' Payments</u>: In consideration for the settlement and release of all claims of the Opt-In Plaintiffs against Defendant, each Opt-In Plaintiff shall receive a settlement payment calculated pursuant to this paragraph (minus required tax withholdings on the amount reflected as "Total Overtime Wages"). Under this calculation, you are entitled to receive

      a. Total Overtime Wages:     $ _____
      b. Liquidated Damages:      $ _____

The calculation, which was mutually agreed upon by the parties, was completed as follows:

a. Each calculation was made by analyzing the respective Opt-In Plaintiff's pay statements between the dates of July 2014 and December 15, 2016. The pay statements are for a two-week period.

b. The formulation included multiplying the regular hours worked by the regular rate; the overtime hours by the regular rate; the remaining hours by their respective rates; and then the at-issue category hours by the wage differential.

c. When making this calculation, if multiple wage differentials were at issue, the higher of the wage differentials was used.

d. The total amount owed was then divided by the total hours worked to get the average rate, which was then multiplied by 50% to get the proper overtime rate.

e. That number was then multiplied by the total overtime hours worked.

f. The resulting number is what the employee contends he/she should have been paid, and after subtracting what the employee actually was paid, that number is the amount owed.

g. The total premium OT owed to the Opt-In Plaintiffs was $60,369.01.

h. To calculate liquidated damages, the total premium OT owed was multiplied by a factor of 2.

i. In an effort to promote efficiency and expediency of the process, it was mutually determined by the parties that it was not possible to break down each wage differential category for each employee, as some employees were subject to multiple at-issue categories. Therefore, the parties agreed

to assume that all of the at-issue categories subject to a wage differential were overtime hours.

j.  Since the Opt-In Plaintiffs were receiving the financial benefit of this agreed-to method of calculation of overtime, it was mutually agreed that using the full amount calculated for an aggregate liquidated damages amount is problematic and an impediment to settlement. To resolve this issue, the parties agreed to a 25% reduction in liquidated damages, bringing the total amount of liquidated damages down to $45,276.98, for a total settlement amount of $108,146.30.

10. Cashing of Settlement Check: If any Opt-In Plaintiff fails to cash his/her award checks within one hundred twenty (120) calendar days of distribution, the uncashed checks will be null and void. By failing to timely cash his/her checks, the Opt-In Plaintiff will still be bound by the release and waiver contained in this Settlement Agreement.

11. Funding of Settlement: Within fourteen (14) calendar days after the Court grants approval of the Settlement Agreement for the *Shelton* lawsuit and dismisses the *Shelton* lawsuit without prejudice, Defendant will begin issuing settlement checks to the Opt-In Plaintiffs upon receipt of executed Settlement Agreements. Within fourteen (14) calendar days after the Court grants approval of the Settlement Agreement for the *Shelton* lawsuit and dismisses the *Shelton* lawsuit without prejudice, Defendant will issue a check to Plaintiff's counsel for the Attorneys' Fee Award. Except for the employer's side of tax payments on the payments to the Opt-In Plaintiffs, Defendant's payment obligations, including its obligation to pay any attorneys' fees or costs, will be fully satisfied upon issuing the payments.

      a.    <u>Payment Procedure</u>: Within ten (10) days of receipt of an executed Settlement Agreement by an Opt-In Plaintiff, Defendant will issue two checks through its payment system to each Opt-In Plaintiff at his/her last known address as provided to Defendant by Plaintiff's counsel. One check will be for the wage loss payment, one check will be for the liquidated damages payment.

      b.    <u>Tax Treatment of Wage Loss Payment</u>: The Total Premium OT settlement payments to each Opt-In Plaintiff will be treated as wages and will be reported to the Internal Revenue Service on a Form W2.

      c.    <u>Tax Treatment of Liquidated Damages Payment</u>: Each Opt-In Plaintiff who is paid a liquidated damages award will receive an IRS Form 1099 for their individual liquidated damages award, and will be responsible for correctly characterizing this additional compensation for tax purposes and for payment of any taxes owing on said amount.

12.    <u>Administration of Settlement Payments</u>:

      a.    <u>Attorneys' Fees and Costs</u>: Subject to the Court's approval, Defendant agrees to pay a total of $40,412.00 to Plaintiff's counsel for attorneys' fees ("Attorneys' Fees Award"). The Attorneys' Fees Award will compensate and reimburse Plaintiff's counsel for (1) all of the work already performed by Plaintiff's counsel in this case and (2) all of the work remaining to be performed by Plaintiff's counsel. The payment to each Opt-In Plaintiff is not contingent upon Plaintiff's counsel's receipt of the entire payment described in this paragraph, and the Court's disapproval of any portion of

the payment to Plaintiff's counsel shall not be grounds for voiding other provisions of this Settlement Agreement. Defendant agrees to not object to any application to the Court by Plaintiff's counsel for payment of the Attorneys' Fees Award. Defendant will issue IRS Form 1099s to Plaintiff's counsel in connection with payment for attorneys' fees and costs.

b. <u>Notice of Settlement to Opt-In Plaintiffs</u>: The Settlement Agreement will be sent by Plaintiff's counsel to each Opt-In Plaintiff. Each Opt-In Plaintiff will be required to sign and return the Settlement Agreement. Failure to return the Settlement Agreement within thirty (30) days after the Settlement Agreement is sent by Plaintiff's counsel will result in each Opt-In Plaintiff's forfeiture of any entitlement to the settlement proceeds negotiated in this case. However, in such circumstance where any Opt-In Plaintiff forfeits entitlement to the settlement proceeds negotiated in the *Shelton* lawsuit by failing to timely return the Settlement Agreement, such Opt-In Plaintiffs' claim for such back wages shall survive, subject to any applicable statute of limitations. The date of receipt by Plaintiff's counsel shall be the exclusive means used to determine whether a Settlement Agreement has been timely received. In the event of any dispute concerning whether an Opt-In Plaintiff has timely and properly signed and returned the Settlement Agreement, counsel for the Parties shall meet and confer in good faith to resolve such dispute.

## **RELEASE**

13.  Upon approval of the Settlement Agreement and entry of order of dismissal without prejudice, each Opt-In Plaintiff will release, to the fullest extent permitted by law, any and all wage and hour state and federal wage claims between July of 2014 and December 15, 2016, including the FLSA, Portal-to-Portal Act, and Illinois Minimum Wage Law claims, known or unknown, contingent or accrued, against Defendant, its parent or subsidiary corporations and all agents thereof, arising under the state or federal law, including the FLSA, Portal-to-Portal Act, and Illinois Minimum Wage Law which arise from the claims in this lawsuit herein upon approval of the settlement by the Court. The consideration for the payments made by the Defendant and the terms described herein shall be in exchange for the dismissal without prejudice and the release of Defendant, and each of its present and former parent companies, subsidiaries, affiliates, shareholders, officers, partners, directors, members, servants, employees, agents, attorneys, insurers, predecessors, representatives, accountants, past, present, and future, successors and assigns, and each and all of their respective officers, partners, directors, members, servants, agents, shareholders, employees, representatives, accountants, insurers, and attorneys, past, present, and future, and all persons acting under, by, through, or in concert with any of them, from any and all state and federal law, including the FLSA, and Portal-to-Portal Act, and Illinois Minimum Wage Law claims, debts, liabilities, penalties, demands, obligations, guarantees, costs, expenses, attorneys' fees, and damages for the alleged violations under the state and federal law, including the FLSA, and Portal-to-Portal Act and Illinois Minimum Wage Law.

## PUBLICITY PROVISION

14.   By their signature below, Plaintiff [INSERT] agrees not to issue a press release to news media outlets or to participate in press conferences or media interview regarding the terms of the Settlement Agreement. Plaintiff [INSERT] agrees that he/she will not publicize the terms of the Settlement Agreement to any third party, including through the press or on the internet.

## NO PRIOR ASSIGNMENTS

15.   The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, or purported to assign or transfer to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## NO ADMISSION

16.   Nothing contained herein is to be construed or deemed an admission of liability, culpability, negligence or wrongdoing on the part of Defendant. Defendant specifically denies any liability. Each of the Parties hereto has entered into this Settlement Agreement with the intention to avoid further disputes and litigation, and the expenses that necessarily follow. The Parties agree that this Settlement Agreement reflects their good faith compromise of the claims raised in this action, based upon their assessment of the mutual risks and costs of further litigation and the assessments of their respective counsel.

## CONSTRUCTION

17.   The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of arm's length and mutual negotiations between the Parties. The Parties further agree that this Settlement Agreement shall not be construed in favor of or against

any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Settlement Agreement.

## CAPTIONS AND INTERPRETATIONS

18. Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

## MODIFICATION

19. This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing singed by the Parties hereto.

## INTEGRATION CLAUSE

20. This Settlement Agreement contains the entire agreement between the Parties, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein. No rights hereunder may be waived except in writing.

## BINDING ON ASSIGNS

21. This Settlement Agreement shall be binding upon and insure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

## **COUNTERPARTS**

22. This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

Dated: March __, 2018.


_____  Date: _____
[INSERT EMPLOYEE]


**On Behalf of Employer:**

_____  Date: _____

By its: _____